***********
The undersigned have reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award of Deputy Commissioner Gregory with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission for hearing and the Commission has jurisdiction of the parties and subject matter.
2. An employee/employer relationship existed between plaintiff and employer on April 18, 2001.
3. Travelers Insurance Company was the carrier on the risk for Time Warner Cable.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. The proper compensation rate for plaintiff is $620.00, the maximum rate for 2001.
6. The issues before the Full Commission are:
Whether plaintiff has sustained any compensable period of disability as a result of her workers' compensation injury? Is plaintiff entitled to compensation for her injury? If so, of what sort and to what extent?
Whether plaintiff is entitled to temporary total disability, permanent partial disability, medical bills paid, and ongoing medical treatment for injuries sustained?
Whether plaintiff is entitled to any temporary disability benefits after May 29, 2001 when she was released to return to work without restrictions by her treating physician; and
Whether defendants are entitled to a credit for payment of unemployment and/or short-term disability benefits paid to plaintiff, pursuant to N.C.G.S. § 97-42, against any workers' compensation benefits awarded to plaintiff?
Whether Plaintiff is entitled to reasonable attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
7. The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
(a) A set of medical records was admitted as Stipulated Exhibit 1.
 (b) A Time Warner Cable office e-mail was admitted as Plaintiff's Exhibit 1.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty years old with a work history in sales.
2. Plaintiff began working with defendants in September 2000. On April 18, 2001, plaintiff was employed by defendants as a cable subscription salesperson. Plaintiff's job duties required her to go door-to-door to make sales calls for cable subscriptions or additional services. The calls were based on a geographic area and assigned on index cards given to her by her supervisor. Although the stated hours were 8:00 or 8:30 a.m. to 5 p.m., the job essentially required no set hours but instead required flexibility based on the time at which customers could be found at home. Therefore, in order to locate customers at home, plaintiff worked some evening hours. Plaintiff, if alone, typically would park her car and walk to 4 or 5 houses depending on the neighborhood or, if plaintiff felt uncomfortable going to a neighborhood at night alone, then her boyfriend would accompany her and drop her off house by house.
3. Plaintiff was an excellent employee and was a very successful salesperson, nicknamed "Queen of Satellites" according to Jenny Ortiz who was plaintiff's supervisor. Plaintiff enjoyed her job, which had no limits with regard to goals or salary other than when all employees were required to limit their geographic territory based on the card system. In fact, plaintiff earned approximately $1,900.00 to $3,200.00 bi-weekly and had earned up to $3,400.00 while working for defendants. Plaintiff's earnings at the time of her injury qualify her for the maximum weekly compensation rate for 2001 of $620.00.
4. On April 18, 2001, plaintiff was making sales calls in the evening during the dusk to dark hours while her boyfriend waited in the car. As plaintiff walked to her car from a customer's home, she stepped in a hole and fell, twisting her body and injuring her back and left leg. Plaintiff felt an immediate onset of pain.
5. The next morning, April 19, 2001, plaintiff attempted to reach her immediate supervisor, Ms. Ortiz, to report her accident. However, Ms. Ortiz was on vacation. Therefore, plaintiff reported her injury to Horace Lemmons, her team leader. Mr. Lemmons did not immediately convey plaintiff's report of injury to anyone. However, Mr. Lemmons eventually reported to Ms. Ortiz that plaintiff had had an accident but he was not clear in his explanation as to what had happened to plaintiff. Linda Baez, defendant-employer's human resources manager, confirmed that Mr. Lemmons is a poor communicator and that there was probably a communication break-down during the reporting process.
6. Due to the miscommunication and lack of communication, neither Ms. Ortiz nor Ms. Baez were initially aware that plaintiff was claiming a work-related injury and an Industrial Commission Form 19 report of injury was not filed. At the hearing before the Deputy Commissioner, Ms. Baez testified that she would have filed a Form 19 if plaintiff had reported a work-related injury. Instead, Ms. Baez assisted plaintiff with filing a claim for short-term disability benefits.
7. On April 19, 2001, the day after her injury, plaintiff sought medical treatment at Doctor's Urgent Care Centre at which time plaintiff reported stepping into a hole while at work and experiencing back and left leg pain. An x-ray of plaintiff's lumbar spine was taken, which revealed mild degenerative disk disease and convex curvature, but was otherwise negative. Plaintiff was diagnosed with an acute lumbar strain with sciatica and treated with medications.
8. On April 24, 2001, plaintiff returned in follow-up to Doctor's Urgent Care Centre. Plaintiff was again examined and diagnosed with lumbar strain and sciatica. Due to continued complaints, plaintiff made an appointment with an orthopaedist, Dr. Bradley Broussard, whom she had seen previously for a knee problem, which began about a year prior to her April 18, 2001 injury. In addition, plaintiff was instructed to remain out of work until her appointment with Dr. Broussard.
9. On May 3, 2001, plaintiff presented to Dr. Broussard. Plaintiff reported tripping and falling and complained of mainly left extremity pain but reported initially experiencing low back pain. Plaintiff did not describe to Dr. Broussard that her fall had occurred at work and he later filled out a disability application for plaintiff indicating that her condition was not work-related. Dr. Broussard examined plaintiff and reviewed lumbar x-rays interpreting them as showing no significant bony abnormalities. However, plaintiff displayed a positive straight leg raise test and Dr. Broussard diagnosed radicular pain and was concerned that plaintiff had herniated a disc. Plaintiff was prescribed a Medrol dose pack and an MRI was ordered. Dr. Broussard kept plaintiff out of work.
10. The MRI scan was performed on May 10, 2001. Dr. Broussard reviewed the MRI scan and found some mild L5-S1 degenerative disk space narrowing with no other obvious or remarkable findings.
11. On May 29, 2001, Dr. Broussard examined plaintiff who continued to complain of radicular pain. Plaintiff also reported some numbness in her left leg and walked with an antalgic gait. Dr. Broussard diagnosed plaintiff with probable hip greater trochanteric bursitis, modified plaintiff's prescription medication and instructed plaintiff to contact him if that did not relieve her pain so that an injection could be considered. Further, Dr. Broussard instructed plaintiff to return to work without restrictions.
12. On May 30, 2001, the day after her visit, plaintiff contacted Dr. Broussard's office with continued complaints of pain and requested a neurosurgical consult. Accordingly, Dr. Broussard provided plaintiff with a note releasing her from work until being seen by a neurosurgeon. Dr. Broussard testified that the note was not for an indefinite period, but only until being seen by a neurosurgeon.
13. Plaintiff was not seen by a neurosurgeon until July 31, 2001, at which time she was examined by Dr. Wadon. Plaintiff continued to complain of back and left leg pain. Dr. Wadon reviewed plaintiff's medical history, performed a neurological examination and reviewed plaintiff's MRI. Dr. Wadon found plaintiff's MRI scan to be normal given plaintiff's age and that plaintiff was not a surgical candidate. Dr. Wadon recommended a pain management specialist to benefit plaintiff's complaints. Dr. Wadon kept plaintiff out of work, at plaintiff's request, until she could be seen for pain management. Although Dr. Wadon did not intend for the out-of-work note to be on a long-term basis, plaintiff had not been seen by a pain management specialist at the time of the hearing before the Deputy Commissioner, and continued to experience debilitating pain at that time.
14. Plaintiff testified at the hearing before the Deputy Commissioner that her activities were limited because it was very difficult to sit down and stand up for any extended period of time.
15. Plaintiff and Ms. Baez discussed plaintiff's return to work but plaintiff felt she was not capable of returning to work due to the ambulatory demands of her sales position. Ms. Baez discussed a customer service position for plaintiff but it yielded a lower income potential.
16. On June 4, 2002, plaintiff returned to Dr. Broussard with continued complaints of leg difficulties and was referred for a neurological evaluation by Dr. Charya. Dr. Broussard felt that since he was not actively treating plaintiff, he was not in the best position to evaluate her work status.
17. Plaintiff's out of work status after May 29, 2001 is based mainly, if not solely, on her complaints of pain. Plaintiff's subjective complaints of pain are accepted as credible.
18. Plaintiff received $1,401.14 in short-term disability benefits pursuant to an employer-funded plan between April 26, 2001 and May 29, 2001.
19. In addition, in September 2001, plaintiff applied for and began receiving unemployment benefits for a total of 39 weeks at the rate of $396.00 per week.
20. Jerome Solomon, a sales representative with defendant-employer who works with business customers and does not work directly with plaintiff, testified that he observed plaintiff after her alleged work-related injury on two occasions in a Lowe's store. Mr. Solomon stated that plaintiff walked without a limp until she saw him and consequently began limping. Mr. Solomon also stated that he saw plaintiff carrying a bucket and supplies with a man. Mr. Solomon admitted that he did not observe plaintiff but for a brief period. Greater weight is given to plaintiff's complaints of pain than to Mr. Solomon's brief observations of plaintiff.
21. Plaintiff sustained an interruption of her normal work routine by the introduction of unusual circumstances when she stepped in a hole on April 18, 2001 injuring her back, left leg and hip.
22. Plaintiff continued to experience pain and had not yet reached maximum medical improvement at the time of the hearing before the Deputy Commissioner.
23. Due to plaintiff's complaints of pain and the fact that she has not yet received pain management treatment, plaintiff has been unable to earn the same or greater wages in any employment since April 19, 2001 and continuing. Plaintiff is in need of pain management treatment and an evaluation regarding work restrictions.
24. Plaintiff is entitled to an Independent Medical Evaluation to determine and evaluate the current status of her work related injury by accident of April 18, 2001.
25. Defendants have defended this matter upon reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendants on April 18, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has met her burden of establishing disability. An employee may establish disability by proving: (1) she was incapable of earning the same wages in the same employment; (2) she was incapable of earning the same wages in any other employment; and (3) her incapacity to earn was caused by the injury. Arrington v. Texfi Indus., 123 N.C. App. 476,473 S.E.2d 403 (1996). Plaintiff, in the instant case, offered evidence to meet her burden to prove disability. N.C. Gen. Stat. §§ 97-29, 97-30.
3. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to receive temporary total disability compensation at a rate of $620.00 per week for the period beginning April 18, 2001 and continuing until the plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of her compensable injury of April 18, 2001 as may be required to provide relief, effect a cure, or lessen the period of disability, including pain management treatment, subject to statutory limitations. N.C. Gen. Stat. §§ 97-25; 97-25.1,97-2(19).
5. Plaintiff is entitled to an Independent Medical Evaluation by a physician to be agreed upon by the parties and to be paid for by the defendants. N.C. Gen. Stat. § 97-27.
6. Defendants are entitled to a credit against all accrued temporary total disability benefits for all short-term disability benefits paid to plaintiff pursuant to the employer-funded plan and for the 39 weeks of unemployment benefits received by plaintiff. N.C. Gen. Stat. §§ 97-42;97-42.1.
7. Defendants have defended this matter upon reasonable grounds. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter provided, the defendants shall pay to plaintiff compensation benefits to plaintiff at the rate of $620.00 per week beginning April 19, 2001 and continuing until the plaintiff returns to work or until further order of the Commission. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinafter provided. Furthermore, the amount, which has accrued, will be paid in a lump sum, minus defendants' credit of $1,401.14 for short-term disability benefits paid to plaintiff pursuant to an employer-funded short-term disability plan and for the 39 weeks of unemployment benefits received by plaintiff.
2. Defendants shall pay for all reasonably necessary medical treatment related to plaintiff's injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability, including pain management treatment, subject to statutory limitations.
3. The parties shall confer and agree upon a physician to perform an Independent Medical Evaluation in order to ascertain plaintiff's current medical condition. The Independent Medical Evaluation shall be at a reasonable time and place based upon plaintiff's location and physical restrictions.
4. The cost of the Independent Medical Evaluation shall be paid for by the defendants.
5. An attorney fee of 25% is hereby approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel by defendants by deducting one fourth of the lump sum due plaintiff and then thereafter by every fourth check.
6. Defendants shall pay an expert witness fee in the amount of $175.00 to Dr. Broussard.
7. Defendants shall pay the costs due the Commission.
This the 14th day of October, 2003.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER